FAUST, Appellant, v. LADYSMITH-HAWKINS SCHOOL SYS-
TEMS, JOINT DISTRICT No. 1, and others, Respondents.

Supreme Court

*No. 76–241. Argued February 28, 1979.—Decided April 10, 1979.*
(Also reported in 277 N.W.2d 303.)

For the appellant there were briefs by *Priscilla Ruth Mac Dougall* and *Bruce Meredith,* staff counsel, Wisconsin Education Association Council, of Madison; and *Gregory A. Wilson* and *Wilson & Schwartzman,* of counsel, of Chicago, Illinois, and oral argument by *Mr. Meredith.*

For the respondents there was a brief by *Daniel B. Merriam* and *Merriam & Weiler* of Ladysmith, and oral argument by *Daniel B. Merriam.*

HEFFERNAN, J.   The appeal is from an order which denied Kristina L. Faust's petition for a writ of mandamus to direct the school district to give effect to an alleged teaching contract between Faust and the district for the 1976–77 school year. The petition for the writ was dismissed by the court on July 22, 1976.

Two questions are presented on this appeal. First, in circumstances where a teacher enters into a one-year contract with the understanding that the contract will not be renewed, is it necessary that the school district, nevertheless, comply with the notice and conference requirements of sec. 118.22 (2) and (3), Stats.? Additionally, the question is posed: Under these circumstances, where no constitutional right to due process is asserted, can the school district make a preliminary determination not to renew the teacher's contract before holding the private conference required under sec. 118.-22 (3), Stats.? We hold that each of these questions must be answered yes. We affirm the order of the trial court.

The renewal of teachers' contracts by school boards other than those of a city of the first class is dealt with in sec. 118.22, Stats. Pertinent to the appeal of this case are sec. 118.22 (2) and sec. 118.22 (3).[1]

---

[1] "118.22 **Renewal of teacher contracts.** . . .

"(2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the following April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period

Kristina Faust was initially hired by the school district in August of 1974 and was given a one-year contract as an elementary school teacher. On April 29, 1975, Faust and the school district entered into a second one-year contract. This contract, which was admitted into evidence by stipulation of counsel, was for Faust to teach the fifth grade for the 1975–76 school year. The contract included the following sentence:

"This contract is issued and accepted by both parties with the understanding that it will not be renewed under any circumstances for the 1976–77 school year."

On February 12, 1976, the board of education voted to have Harold Billings, the superintendent of schools, send Faust a notice of termination of her contract. The minutes of the board of education meeting for that date included the following entry:

"Motion was made by Mr. Gerken, seconded by Mrs. Ermer and passed that Mr. Billings should send a notice of termination to Tina Faust of her contract effective at the end of the 1975–76 school year."

Pursuant to the direction of the school board, Billings wrote to Faust on February 19, 1976. That letter stated:

"Just a short note informing you that the Board of Education at a regularly scheduled meeting held on February 12, 1976 voted unanimously not to renew your contract for 1976–77 as per the contract signed by you April 29, 1975. This preliminary written notice is issued

of time as to which the teacher is then under a contract of employment with another board.

"(3) At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew his contract."

in compliance with Section 118.22 of the Wisconsin State Statutes. Furthermore, if you desire a private conference with the Board of Education to discuss this matter, you have five days in which to file such a request."

Faust requested a private conference, and the conference was held on March 11, 1976. She appeared before the full board with two representatives of the teachers union, who spoke on her behalf and urged that her contract be renewed.

At the court hearing on the petition for a writ of mandamus, Faust testified that she had been given full opportunity at the conference to tell the board why she should have a new contract. She acknowledged that the board members told her that the reason for her nonrenewal was the declining school enrollment. They also pointed out to her that the provision of her contract with respect to nonrenewal was a basis for not issuing a new contract. Immediately after the private conference, the board voted to affirm its action of February 12. After receiving notification of the decision not to renew the contract, Faust commenced the action for mandamus.

Although the court dismissed the petition for writ of mandamus, it held that the nonrenewal provision, which was made a part of the contract for 1975–76, was not in itself a sufficient preliminary notice to meet the requirements of sec. 118.22(3), Stats. It held that, despite the nonrenewal provision in the contract, sec. 118.22(3) was applicable. Additionally, it held that the notice of nonrenewal and the conference afforded Faust satisfied the requirements of the statute and of constitutional due process.

While we agree with the trial court's conclusion that the statute was applicable and that the statutory requirements were met, we conclude that this case does not involve a constitutional right to procedural due process.

Faust has expressly disavowed any claim of infringement on her constitutional rights. Her only assertion is that she was denied the procedural rights afforded her by the statute.

We conclude that neither a property nor liberty right of Faust is involved in this case. A property interest, protected by the fourteenth amendment, is defined as "a legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). That property interest or legitimate claim of entitlement must be based upon state law or on contract terms. *Roth,* at 577; *Perry v. Sindermann,* 408 U.S. 593, 596 (1972).

In Sindermann, the Supreme Court pointed out that lack of tenure or an express contractual right to reemployment does not necessarily mean that there is no property interest at issue, for, in some circumstances, a legitimate claim of entitlement can be based on a de facto tenure program, on which employees rely, or on implied contract terms.

In the instant case, the question of de facto tenure is not raised; and, in addition, the express provision of the contract which recited that Faust accepted employment with the understanding that she would not be rehired leads inexorably to the conclusion that she has no property interest in her reemployment that would be protected by the fourteenth amendment. Faust expressly acknowledges that the right she seeks to have protected is not a property right protected by the fourteenth amendment.

Neither is a liberty interest protected by the fourteenth amendment involved. *Roth* pointed out that when a public employer declines to rehire or discharges an employee and at the same time makes an accusation that may damage his reputation, and therefore his associational interests and his ability to find new employment, the employee has a liberty interest at stake, and procedural due process must be provided.

In the present case there was no suggestion of any dissatisfaction with Faust's performance. The only reason given for not rehiring her was a decline in the school enrollment. No liberty interest was implicated. Hence, the constitutional requirements of due process do not apply. *Richards v. Board of Education,* 58 Wis. 2d 444, 452, 206 N.W.2d 597 (1973).

The basic question is whether the school district was required to afford Faust the statutory procedural rights provided by the legislature in sec. 118.22(2) and (3), Stats. The school district argues that the requirements of the statute are inapplicable, because the contract itself gave notice that it would not be renewed. Basically, this is an argument that Faust waived her statutory rights to a preliminary notice of renewal and a private conference when she entered into the employment contract for the year 1975-76.

While the contract includes the sentence stating that both parties entered into the contract with the understanding it would not be renewed, this language does not unequivocally waive the rights conferred by the statute. The language is not a contract term, but rather a statement of understanding on which the contract was based or an inducement under which the school district was willing to enter into the agreement. Because there was no express relinquishment of the statutory rights and no indication whatsoever that Faust knew of them, it cannot be argued, on the basis of this record, that she waived those rights.

When a statute confers a private right or benefit, the person for whose protection or benefit the statute was enacted may waive the statutory benefit. *Davis v. La Crosse Hospital Assn,* 121 Wis. 579, 99 N.W. 351 (1904). That waiver must be clear and unambiguous. *Timken Roller Bearing Co. v. N.L.R.B.,* 325 F.2d 746, 751 (6th Cir. 1963). A waiver is a voluntary and intentional re-

linquishment of a known right. *Attoe v. State Farm Mut. Automobile Ins. Co.*, 36 Wis.2d 539, 545, 153 N.W.2d 575 (1967).

Under these standards it is apparent that Faust did not voluntarily and knowingly relinquish her right to the procedural requirements of the statutes. Moreover, we conclude that, even had she known of her rights and had voluntarily acquiesced in her waiver, the waiver would be ineffective. Where a statutorily created private right serves a public policy purpose, the persons or entities protected by the statute cannot waive the right. *Von Uhl v. Trempealeau County Mut. Ins. Co.*, 33 Wis.2d 32, 146 N.W.2d 516 (1966); *Jones v. Preferred Accident Ins. Co.*, 226 Wis. 423, 425, 275 N.W. 897 (1938).

It is apparent that there are strong public policy reasons for concluding that the procedural rights afforded by sec. 118.22, Stats., cannot be waived by individual teachers. The provisions of that statute advance the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers. In addition, it establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system. These procedures inure to the benefit of not only the teacher and the school district but to the public at large.

We conclude that it would be contrary to public policy to permit a waiver of the provisions of sec. 118.22, Stats. Nevertheless, we conclude that the procedures employed by the board of education comported with the requirements of the statute. Although the board of education voted to have the superintendent of schools send Faust a notice of termination, the notice sent to Faust told her that the notice constituted a preliminary notice under sec. 118.22 and that she had a right to a private conference.

Faust's argument is that the entry in the board minutes of February 12, 1976, and the letter of the superintendent show that the board had already decided not to rehire her before the private conference. From this, it is argued that the decision was final from the time the board voted at its regular meeting February 12 and that the procedures that followed were "mere window dressing" and "a sham."

Faust's characterization of the board's initial decision as final is not supported by the record. It is indeed apparent that the board did make a preliminary decision not to renew her contract before sending the letter, which served as a preliminary written notice. It is quite another thing, however, to conclude that the subsequent conference was merely "window dressing" and "a sham." To so hold, it would be necessary either to assume or to find bad faith on the part of the board and to find an unwillingness to listen to any information which would be a reason to renew the contract.

Were there evidence that a school board followed a pattern of action which showed that the conferences provided were a mere sham, a different conclusion might be reached. The record here does not bear out any such pattern of bad-faith action. In fact, the undisputed allegation of the school board's return to the petition for writ of mandamus indicates that in 1975, a year prior to the contract in question here, Faust was notified that she would not be rehired because of declining enrollment. Nevertheless, it was thereafter determined that a position had become available, and the contract for the 1975–76 employment was entered into. Accordingly, the record shows that on a prior occasion notice of termination had been given and, nevertheless, subsequently the contract was renewed. While we cannot conclude from this single instance that good faith has been convincingly demonstrated, it is apparent that there has been no showing of a routine practice by the board of a bad-faith refusal to reconsider a decision.

Even where official decisionmaking must conform to the full constitutional due process requirements, the United States Supreme Court has stated that there is a "presumption of honesty and integrity in policymakers with decisionmaking power." *Hortonville Joint School District No. 1 v. Hortonville Education Assn.*, 426 U.S. 482, 497 (1976).

This court has also stated that there is a presumption that officeholders will fulfill their public responsibility when making a decision following a due process hearing. *State ex rel. DeLuca v. Common Council*, 72 Wis.2d 672, 690, 242 N.W.2d 689 (1976).

We think the presumption of good faith by official decisionmakers is equally applicable in the context of the less formal statutory procedures calling for a conference rather than a hearing. There is nothing in the record from which the trial court could have concluded that the conference was merely *pro forma* in nature and was conducted in bad faith.

The trial court recognized, as we do, that a preliminary decision not to renew a contract is but a step in the determination that the contract will not be renewed. It also indicated that it would be an overly technical reading of the statute to conclude that the procedures used in the instant case failed to meet the statutory requirements because the letter sent to Faust by the superintendent stated that the board had voted not to renew her contract instead of stating that the board was considering nonrenewal, when that letter additionally stated that it was a preliminary notice and that a private conference would be provided.

The actual decisionmaking process has been described in a commentary appearing in the Wisconsin Law Review. Therein it is stated:

"From the outset, the school board is involved in the merits of the decision to nonrenew. In order to meet the time deadlines set out by the statutes, the board holds a meeting soon after the first of the year. At this time, they listen to the recommendations of the school administrators as to the renewal or nonrenewal of the current faculty members, and make a preliminary decision to notify the teacher that they are considering nonrenewal. In practical effect, at this early date, the decision has been made to nonrenew. If the teacher does not elect to have a private conference with the board, there will be no further consideration of the matter and the teacher will be nonrenewed. If the teacher requests a private conference, the board again considers the matter after the conference." Note, 1971 Wis. L. Rev. 354, 359.

It is apparent, therefore, that only a preliminary decision by the board not to renew would trigger the notice required by the statute. This interpretation of the statute is borne out by the legislative history. Sec. 118.22(3), Stats., was originally created by the Laws of 1965, ch. 441. When the school laws were recodified in 1967, the statute was repealed and reenacted in its present form. Laws of 1967, ch. 92, secs. 8 and 17. The subsection was amended to state that, prior to giving written notice of refusal to renew, the board "shall inform the teacher *by preliminary notice* in writing that the board is considering nonrenewal." (Emphasis supplied.) The words "by preliminary notice" were added. The committee comment to the revised section stated:

"Also specific reference is made to sub. (3) to 'preliminary notice' to make it clear that the teacher receives a preliminary notice in the case of the school board's refusal to renew his contract." Laws of 1967, ch. 92.

This comment by the committee, as well as the statute itself, suggests that a preliminary written notice can only be given where a preliminary decision not to renew has been made. We would think it superfluous for a

school board to characterize its original action as a preliminary decision not to renew when, in any event, the statute requires it to inform the teacher that the action taken was preliminary. We point out, however, that in some circumstances the facts might demonstrate a pattern of conduct showing that the subsequent conference was indeed a sham. The trial judge correctly analyzed the present situation when he stated in his opinion:

"So, whereas the claim is made here that . . . the board had deaf ears, the record doesn't bear it out. I think that exactly the same thing happened that would have happened had the notice sent, or the letter, on February 19th said the board is considering your nonrenewal."

Were a due process question involved, the fact that the board made a preliminary decision not to renew Faust's contract before the conference might violate due process. As pointed out above, however, no claim of the right to due process was involved in the instant case. The only claim made is that Faust was not afforded the procedural rights guaranteed by secs. 118.22(2) and 118.22(3), Stats. The record fails to show any violation of those rights.

*By the Court.*—Order affirmed.

The following memorandum was filed June 29, 1979.

PER CURIAM *(on motion for reconsideration)*. The appellant's motion for reconsideration has invited our attention to language in the opinion which could be construed to hold that in no circumstances could a teacher waive the statutory rights conferred by sec. 118.22(2) and (3), Stats.

Our holding is confined to the facts in the case of Kristina L. Faust. That holding, insofar as it concerns the

issue raised on reconsideration, is that an employment contract entered into with a teacher, although it recites that the employment will not be renewed, under Wisconsin law cannot be construed as a waiver of the employee's statutory rights granted by sec. 118.22(2) and (3), Stats.

We do not suggest that a teacher who has been given a preliminary notice of nonrenewal does not have the right to waive the subsequent procedures set forth in sec. 118.-22(2) and (3), Stats. That question and other questions of waiver not raised by the facts of this case are left undecided.