UNIVERSAL DIE & STAMPINGS, INC., Plaintiff-Appellant,

v.

Danny JUSTUS, Defendant,

Don Lee ROLSTAD, and Rolco, Inc., Defendants-Respondents.

Court of Appeals

*No. 91-0627. Submitted on briefs July 14, 1992.—Decided February 25, 1993.*

(Also reported in 497 N.W.2d 797.)

For the plaintiff-appellant the cause was submitted on the briefs of *J. Thomas Haley* of Madison.

For the defendants-respondents the cause was submitted on the brief of *John Walsh* and *Saul C. Glazer* of *Axley Brynelson* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Universal Die & Stampings, Inc. appeals from a judgment dismissing its complaint against Don Lee Rolstad and Rolco, Inc. The issue is whether the trial court erred by declining to grant Universal's motion for summary judgment. We conclude that summary judgment should have been granted, and therefore reverse with instructions to grant the motion.

## FACTS

In 1984, Universal sued two of its former employees and a corporation that the employees had organized, alleging theft of a customer list. The case was tried on the theory that the employees and the corporation had stolen Universal's trade secret. The trade secret was a treatment of steel used in conveyor belts. The issue at trial was whether Universal or the employees had invented the trade secret. In 1987, the jury found that the corporation, Plexus Industries, and one of the employees, Danny Justus, had stolen the trade secret from its owner, Universal.

After judgment was entered, Universal moved the circuit court for an injunction against Plexus and Justus. The trial court denied Universal's motion on procedural grounds. Universal appealed, and we reversed. *See*

558

*Universal Stampings, Inc. v. Plexus Indus., Inc.*, No. 87-1907, unpublished slip op. (Wis. Ct. App. Feb. 23, 1989). On remand, the trial court enjoined Justus, his agents, employees, successors and assigns from using Universal's trade secret. By this time, Justus had filed a petition in bankruptcy, and Plexus had sold its assets to Rolco, Inc. Rolco assumed Plexus' debts and hired Justus to sell the conveyors it manufactured. Don Lee Rolstad is the sole shareholder of Rolco.

On May 1, 1989, Plexus and Justus moved to reopen the injunction. The trial court denied the motion.[1] No appeal was taken.

Universal commenced this action on March 6, 1989, for damages and an injunction prohibiting Justus, Rolco and Rolstad from using Universal's trade secret. Universal moved for summary judgment. The trial court granted the motion as to Justus, but denied it as to Rolco and Rolstad. The case was tried to a jury under the Uniform Trade Secrets Act, sec. 134.90, Stats., enacted in April 1986. The jury found that when Rolco and Rolstad manufactured metal conveyor belts, the method of treating the conveyor belts was generally known in the metals industry. Because sec. 134.90(1)(c)1., Stats., defines a trade secret as information not generally known to other persons who can obtain economic value from its use, the trial court dismissed Universal's complaint. Universal appeals only from the denial of its motion for summary judgment.

---

[1] We are inferring that the motion was denied as the record does not include an order to that effect. Had the motion been granted, this particular appeal would never have taken place.

## STANDARD OF REVIEW

When reviewing a grant or denial of summary judgment, we apply the same methodology as the trial court. *Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74, 74 (Ct. App. 1985).

> We first examine the complaint to determine whether a claim has been stated and then the answer to ascertain whether it presents a material issue of fact. If they do, we then examine the moving party's affidavits to determine whether a *prima facie* case for summary judgment has been made . . .. If it has, we look to the opposing party's affidavits [or other proof] to determine whether any material facts are in dispute which would entitle the opposing party to a trial.

*Id.* at 521, 373 N.W.2d at 74-75 (citation omitted).

## APPLICATION OF METHODOLOGY

Universal's complaint alleges that Rolstad and Rolco stole its trade secret. Rolstad and Rolco's answer denies that they did so. The issue is joined, and we move to the third step of summary judgment methodology and examine Universal's affidavits and other material. Universal filed affidavits, and pertinent parts of transcripts of Rolstad's testimony taken at a hearing for a temporary restraining order and at a deposition. It included copies of its judgment against Plexus and the injunction issued in that action. A supplementary affidavit included materials obtained through discovery and portions of depositions of four persons were appended.

The materials submitted by Universal in its motion for summary judgment disclose extensive alleged facts. These facts include the following.

On June 11, 1987, the jury returned a verdict for Universal in Universal's suit against Plexus and Justus. On August 7, 1987, Rolstad incorporated Rolco. Rolstad was aware of the suit between Universal and Plexus and Justus. The same attorney that represented Plexus and Justus incorporated Rolco. On August 25, 1987, an order for judgment in Universal's favor was entered. About that time, Plexus went out of business, and Rolco took over the space and the same manufacturing process that Plexus had used. Rolco was substituted for Plexus, and began doing the same thing that Plexus did. It did so by purchasing most or all of Plexus' assets, including its customer lists. It assumed Plexus' debts and kept Plexus' telephone number and post office box. On two or three occasions, Rolco's receptionist identified the business as Plexus. In June and September 1989, Rolco processed orders addressed to Plexus.

Rolstad had been in the welding business for eighteen years but had not built metal conveyor belts prior to forming Rolco. He learned everything about the metal conveyor belt business from Plexus, Justus and the employees with them. After Plexus went out of business, Rolco hired Justus, whose job was sales. Justus was hired to do the same job that he did for Plexus. Justus was paid on commission. He received a commission check on every order of conveyor belts that Rolco manufactured and sold. It did not matter who talked to the customer or whether Justus worked on the sale. Justus had not been working for two or three months but still received the commission checks. Rolco sold its products to essentially the same customers to whom Plexus had sold them. Another employee of Rolco,

Judy Boehnen, worked as a secretary for both Plexus and Rolco. She lived with Justus.

Universal argues that the material presented above constitutes a *prima facie* case in its favor because the doctrine of *res judicata* prevents Rolco and Rolstad from relitigating the former case of *Universal Stampings, Inc. v. Plexus Indus., Inc.* (Sauk County No. 84-CV-160). Whether the doctrine of *res judicata* applies is a question of law. *Post v. Schwall*, 157 Wis. 2d 652, 658, 460 N.W.2d 794, 796 (Ct. App. 1990). We review questions of law *de novo. Id.*

The doctrine of *res judicata* renders a final judgment conclusive in all subsequent actions between the same parties (or their privies) as to all matters which were litigated, or which might have been litigated, in the former proceedings. *Schaeffer v. State Personnel Comm'n*, 150 Wis. 2d 132, 138-39, 441 N.W.2d 292, 295 (Ct. App. 1989). Rolstad and Rolco assert that they were not parties to the former proceeding, and that the previous action could not have applied to them because their theft of Universal's trade secret (which they deny) occurred after the jury verdict in the previous case.

There is no dispute that Rolstad and Rolco were not parties in the prior action. But Universal contends that they are in privity with Plexus and Justus and, hence, bound by the prior judgment. Defining privity is difficult. In *Kimberly-Clark Co. v. Patten Paper Co.*, 153 Wis. 69, 86, 140 N.W. 1066, 1072 (1913), the court said: "In judgments or decrees which do not determine status, but relate to the rights or interests of parties in and to certain property, privies are those who succeed to the ownership of that property or some right or interest therein under one of the parties to the litigation . . .."

RESTATEMENT (SECOND) OF JUDGMENTS § 44 (1982) provides:

> A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor, unless:
>
> (1) A procedure exists for notifying potential successors in interest of pending actions concerning property, the procedure was not followed, and the successor did not otherwise have knowledge of the action; or
>
> (2) The opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action.

In discussing situations where privity will provide *res judicata* effect, Professor Moore states:

> It is true that privity depends upon the circumstances, but the rational grounds on which the concept is based can be stated with sufficient definiteness to give some general indication of its scope and limitations. In most situations in which privity has been held to exist, one or more of the following relationships have been held to exist between those held to be in privity: concurrent relationship to the same property right; successive relationship to the same property or right; or representation of the interests of the same person.

1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE par. 0.411[1], at 392 (2d ed. 1993) (footnote omitted).

FEDERAL RULE OF CIVIL PROCEDURE 65(d) " 'is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with

them, represented by them or subject to their control.' " *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). "Persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment, despite a lack of knowledge." *Id.*

Were it not for this rule, injunctions could be easily evaded by a transfer of assets to one who could engage in the prohibited conduct until an action could be concluded against the transferee.

> "If a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached."

*J. R. Clark Co. v. Jones & Laughlin Steel Corp.*, 288 F.2d 279, 280 (7th Cir.), *cert. denied,* 368 U.S. 828 (1961) (quoting *G. & C. Merriam Co. v. Saalfield,* 190 F. 927, 932 (6th Cir. 1911)).

Rolstad and Rolco assert that *J. R. Clark Co.* is a patent case and therefore inapplicable here. We rely on *J. R. Clark Co.* for its "never-ending litigation" reasoning. That reasoning is equally applicable to a situation where successive trade secret transferees are able to stay one step ahead of the sheriff.

We conclude that Universal's affidavits and other material show a *prima facie* case that Rolstad and Rolco were in privity with Plexus and Justus. We therefore must consider whether the cause of action alleged in this action was litigated, or might have been litigated, in the previous proceedings.

Rolstad and Rolco assert that the present case involves a new cause of action. They argue that *res judicata* does not apply where a subsequent claim arises after the first action, regardless of whether the first and second claim are based upon the same theory of liability. Because Rolstad and Rolco's alleged theft of the trade secret occurred after the *Plexus* trial, they reason that it could not have been litigated in that lawsuit. They further argue that *res judicata* is inapplicable because their defense involves the Uniform Trade Secrets Act (UTSA), while the *Plexus* trial was tried under the common law.

We disagree. Under Rolstad and Rolco's theory, successors to a trade secret thief could always avoid being bound by purchasing the thief's interests just after a judgment had been rendered against the thief. Then, in a suit by the thief's victim, the successor could advance new theories and defenses until the victim ultimately tired and gave up. Rolstad and Rolco's theory is also incompatible with the doctrine of successor liability found in sec. 44 of the RESTATEMENT (SECOND) OF JUDGMENTS, and the common law doctrine that an injunction binds successors-in-interest, now codified in FED. R. CIV. P. 65(d).

Rolstad and Rolco's assertion in this case, that UTSA insulated them from liability, could have been litigated in the *Plexus* case. That act became Wisconsin law over a year before the *Plexus* trial, and applied to a continuing misappropriation of a trade secret which began prior to, on or after the effective date of that act. Section 14, 1985 Wis. Act 236. Finally, if Rolstad and Rolco's theory were correct, no judgment would be safe from attack if the law supporting the judgment were ever changed. We conclude that Universal's affidavits and other material show a *prima facie* case that the matter

litigated in this case was, or could have been, litigated in the *Plexus* case. Universal has shown a *prima facie* case that *res judicata* bars the defenses that Rolstad and Rolco assert in this action.

Summary judgment methodology requires that we next examine the affidavits and other material submitted by Rolstad and Rolco in opposition to Universal's motion for summary judgment.

Rolstad and Rolco submitted affidavits incorporating some of the testimony in the *Plexus* trial, the *Plexus* jury instructions, *in camera* testimony of Harry Eichmann, an officer of Universal, a deposition of Eichmann, some of the *Plexus* trial testimony of Justus and an affidavit of Justus.

The material that Rolstad and Rolco submitted goes to the question of whether Rolstad and Rolco had independent knowledge of Universal's trade secret, and their contention that they are immunized by UTSA. Their brief in opposition to Universal's motion for summary judgment addresses Universal's *res judicata* argument and makes some of the same arguments they make here. They contended there, as they do here, that Universal's trade secret was, under UTSA, no trade secret at all. That, however, was not the issue. The issues before the trial court were the same issues we have addressed—whether Rolstad and Rolco were in privity with Plexus and Justus, and whether the existence of a trade secret was a matter which was litigated, or might have been litigated, in the *Plexus* case. Rolstad and Rolco's affidavits and other material do not provide facts which controvert Universal's affidavits and other material on the issue of *res judicata*.

Rolstad and Rolco contend that *res judicata* may not be used offensively.[3] They quote *Electro-Miniatures Corp. v. Wendon Co.*, 889 F.2d 41 (3rd Cir. 1989), as holding that *res judicata* is inapplicable where a plaintiff brings a second action against the same defendant. Because it was the defendant who asserted *res judicata, Wendon* does not support the proposition that a plaintiff may not assert *res judicata* offensively. Furthermore, we are not bound by a federal court's interpretation of state law. *Lindsey v. Lindsey*, 140 Wis. 2d 684, 693, 412 N.W.2d 132, 136 (Ct. App. 1987). We find the reasoning of the RESTATEMENT, MOORE'S FEDERAL PRACTICE and *Golden State Bottling* persuasive here.

We have reached the end of our analysis of this case under summary judgment methodology. Universal's *prima facie* case has not been controverted by Rolstad and Rolco's affidavits and other material. The result is that Universal should have been granted summary judgment in its favor. We reverse and remand with instructions to enter that judgment. Because the trial court denied Universal's motion, it never reached the issue of Universal's damages and requested injunction. In addition, there remains the question of whether Universal's trade secret covers the process Rolstad and Rolco assert they are now using. Those matters must now be tried.

---

[3] We note that the supreme court recently approved the offensive use of collateral estoppel, a related doctrine. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 495 N.W.2d 327 (1993).

## UNIVERSAL'S SANCTION MOTION

After Rolstad and Rolco filed their brief, Universal moved to strike it and to impose sanctions. By previous order, we declined to strike the brief but reserved the issue of sanctions for this opinion. Universal claims that the brief asserts as fact matters unsupported by the record, and misstates the law in its discussion of two cases. Rolstad and Rolco deny Universal's claims. Both parties accuse the other of deception, lack of candor or similar conduct. Both parties argue, in effect, that the other's case is frivolous, and both request relief from the other's transgressions.

We will impose sanctions. The root of the problem is that the parties are heavily invested in their positions, and in some ways, each is litigating a lawsuit the other is not. No matter who prevailed in this appeal, the successful party would reply, "Of course we won," and the unsuccessful party would be astounded. Rolstad and Rolco assert that the problem arises because a case which defines the issues, *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 431 N.W.2d 721 (Ct. App. 1988), does not appear in either Callaghan's or West's digests, at least not in the sections pertaining to summary judgments. In *Super Valu*, the trial court granted Super Valu's motions for summary judgment on the defendants' counterclaims. We said: "[W]hatever happened or did not happen at trial is irrelevant to our consideration of the motions [for summary judgment]. We address them on the record as it existed when they were decided by the trial court, not on a record expanded by the testimony at trial." *Id.* at 573, 431 N.W.2d at 724. We agree that one could easily miss *Super Valu*, as Rolstad and Rolco did. As a result, a considerable portion of their brief attempts to sustain the judgment by referring to material found in the record made at trial.

That material is the subject of several of Universal's objections.

And yet, the reporters are filled with cases describing summary judgment methodology. We earlier cited *Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74, 74–75 (Ct. App. 1985), for its description of the four-step process we use when analyzing an assertion that summary judgment should, or should not, have been granted. That methodology is incompatible with the use of trial material to sustain the grant or denial of a motion for summary judgment. Rolstad and Rolco cite *Kallembach v. State*, 129 Wis. 2d 402, 385 N.W.2d 215 (Ct. App. 1986), for their assertion that this court "has left open the question of whether resort to the trial court record under these circumstances is appropriate." That view of *Kallembach* is questionable.

Some of Universal's objections are strained. For instance, Rolstad and Rolco incorrectly cited the pages of the record where material might be found. Yet, Universal must have known that that material existed. But this problem occurs on several occasions. We will not discuss separately Universal's nineteen assertions that Rolstad and Rolco's brief misstates the record. We conclude that in some instances it does, but not to the extent that Universal asserts.

We are concerned that Rolstad and Rolco forced Universal to provide trial transcripts despite Universal's pre-briefing statement that it intended only an appeal from the denial of its motion for summary judgment. Though this is consistent with Rolstad and Rolco's assertion that they could use the trial record to buttress the trial court's denial of the motion for summary judgment, we have already noted the tenuous nature of that assertion.

569

We conclude that we should award sanctions against Rolstad and Rolco, but the sanctions should not be severe. Accordingly, we determine that Universal may tax its costs, plus an amount equal to twenty-five percent of its costs.

## FRIVOLOUS APPEAL

Rolstad and Rolco request fees and costs for a frivolous appeal pursuant to Rule 809.25(3), Stats. Because of the outcome of this appeal, we deny that request.

*By the Court.*—Judgment reversed and cause remanded with directions.